## 8022.   PUSHA v. OCEAN STEAMSHIP COMPANY.

The petition did not set forth a cause of action, and the court did not err in sustaining a general demurrer thereto.

DECIDED APRIL 5, 1917.

Action for damages; from city court of Savannah—Judge Davis Freeman.   December 11, 1916.

*D. S. Atkinson,* for plaintiff.   *H. W. Johnson,* for defendant.

LUKE, J. The petition is substantially as follows: The defendant owns, controls, and operates a line of ships. On June 29, 1916, plaintiff, as a laborer in the employment of the defendant, was helping to load a certain ship. The gang of laborers with which he was working were under a foreman, and were loading lumber, 3x10, thirty feet long, on the upper deck toward the stern of the ship, against number 4 hatch on the port side, and were storing the lumber so that it would come in contact with the forward end of the hatch on its left-hand side. The lumber was heavy, each piece weighing about 800 pounds. There were nine men in the gang of laborers in which plaintiff was working, but, under a rule of the company and in this instance at the direction of the stevedore, the gang were split, five men were put to work on the other side of the ship, and the remaining four men, of whom plaintiff was one, were put to work loading the lumber on the port side of the ship. When they were loading the lumber and as they were putting a heavy stick of the lumber up on the top tier in accordance with the rules of the company, plaintiff and Joe Barnwell raised the end next to the hatch, up on the tier, and in accordance with the said rule, while plaintiff held the end up, Barnwell left him and went to the other end to assist the other two men in raising that end on the tier. The rule of the company in regard to storing this lumber was in substance as follows: "As many men as are necessary lift one end of the lumber up on the tier. This end is to be held in place by a laborer or laborers, and as many men as are necessary lift the remaining end up on the tier." In this instance two men were not strong enough to lift the other end, and it became necessary under the said rule of the company, for Barnwell to go to the other end to assist in lifting it. This action, under the said rule, left plaintiff to hold the end which had been placed up on tier. As the lower end of the lumber was being lifted by the three men the strain on plaintiff became so great that he was unable to hold his end of the lumber on the tier, and it fell off, striking him and knocking him into the open hatch. He did not know the lumber was too heavy for him to hold. He was earnestly engaged in his work, which required the concentration of all of his faculties, and he assumed that the defendant would not place him in a dangerous position. When it became apparent to him, in the

exercise of ordinary care, that he could not hold the lumber it was too late to recall Barnwell to his assistance. He could not by jumping backwards avoid the lumber striking him, because there was a donkey engine of the defendant directly back of him, and the only way to escape death was to jump toward the open hatch, and this he did, the lumber at the same time striking him and knocking him into the hatch, and he fell to the lower "between decks," a distance of about twenty-eight feet, breaking both of his forearms and injuring his hip. The four men who, under the rule of the defendant, were placed at the work of storing this lumber were not sufficient to handle it. The lumber was too heavy for them to handle, and too heavy for him to hold up on the top tier. The defendant was negligent in having the hatch open through which he could fall in case the lumber fell on him or towards him, and the only place he had to go in case the lumber did fall was upon this hatch or into it. The work was strenuous and arduous, and required his attention. He assumed that his employer would not put him at a dangerous place to work without warning him or without proper rules to govern the work, or without sufficient men to handle the lumber. He did not know, and, because of his earnest work, in the exercise of ordinary care, could not know that the lumber was too heavy for him to hold, or that the hatch was open. When he did learn that the lumber was too heavy for him to hold it was about to fall on him. It was after Barnwell had turned loose and started toward the other end of the lumber, in accordance with the rules of the company, and plaintiff did not have an opportunity to get out of the way of the lumber or to call Barnwell back to help him hold it, for the lumber quickly fell upon him, knocking him into the open hatch. The lumber was placed on the ship under the supervision of the stevedore, and the stevedore was familiar with the handling of lumber and with its weight, and he and the defendant knew, or could have known, in the exercise of ordinary care, that the lumber was too heavy for four men to handle and store in the manner required by defendant. They knew, or in the exercise of ordinary care could have known, that plaintiff could not hold one end of the heavy stick of lumber up on a high tier, as required by said rule of the defendant; that the hatch through which plaintiff fell was open, and that if a stick of timber fell it would knock him, or other laborers who were

in his position, into the open hatch; and that if the hatch had been covered his injuries would have been slight. It is alleged that defendant was negligent: (1) in having a rule to split up a gang so that only four laborers should store lumber of the weight and size of the lumber which plaintiff and his gang were storing; (2) in not having an additional man to assist plaintiff in holding his end of the lumber on the tier; (3) in having a rule which required the man with whom plaintiff was working, in lifting the end of the heavy and large piece of lumber up on the tier, to leave plaintiff to hold the said lumber and go to the other end of the stick of lumber to raise the same; thus, through the working of the rule, leaving plaintiff in this dangerous position; (4) in having the hatch open next where plaintiff was working, this being the only retreat left open to him in case of the falling of the lumber as it did fall in this instance. It is alleged that each of these acts concurred in causing the injury, and that the plaintiff did not know of the same and did not have equal means with the defendant of knowing of the same; that he was where he had a right to be, and that he assumed that the defendant would furnish him a safe place to work and would have safe rules governing the conduct of the work. The court sustained a general demurrer to the petition, and the plaintiff excepted.

This case is clearly distinguishable from the case of *Brown* v. *Rome Machine & Foundry Co.*, 5 *Ga. App.* 142 (62 S. E. 720). In the *Brown* case one of the three men carrying the ladle was called away by an officer of the company, and Brown and his co-employee were directed by the alter ego of the company to proceed, and, without the help of the employee so called away, the load carried was too burdensome for the two to carry. In the instant case the rule pleaded required that a sufficient number of men stand at each end of the timber to manage the weight. The plaintiff and Barnwell complied with the rule and were holding one end of the lumber. Barnwell, a fellow servant, despite the rule, and with the knowledge and not against the advice of the plaintiff, violated the rule and left the plaintiff to hold the lumber, while he volunteered to assist other coemployees at the other end of the lumber. The facts set forth in the petition do not show that the injury to the plaintiff is attributable to the negligence of the defendant. The court did not err in sustaining the general demurrer.

*Judgment affirmed. Wade, C. J., and George, J., concur.*